IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EYVONNE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1408 |
| | ) |
| | ) |
| THE COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

## SYNOPSIS

The Commissioner of Social Security and the claimant have filed Cross-Motions for Summary Judgment. The issue is whether the Administrative Law Judge's (ALJ) decision to deny benefits to the claimant is supported by substantial evidence. I find that it is. The decision denying benefits is affirmed.

## OPINION

The claimant, Eyvonne Williams ("Williams"), filed an application for disability insurance benefits ("DIB") on October 16, 2002. Williams claimed that she was disabled as a result of several ailments, including seizures, impairments of the lower back, neck, and arm, vision problems, and a pain disorder. Her application for

1

benefits was denied on March 6, 2003, and a request for a hearing was filed. Following the hearing, held on December 16, 2003, the ALJ also rejected the claim. Specifically, the ALJ found that, while Williams was unable to resume her past relevant work, her residual functional capacity allowed her to engage in a variety of light work which exists in significant numbers in the national economy. As a result, she was not disabled as defined by 20 C.F.R. 404.1520.

     Williams claims that the ALJ's decision was not supported by substantial evidence. In particular, she argues the ALJ erred by not relying on Dr. Iannuzzi's report, the ALJ erred in his assessment of her seizure disorder, and the ALJ relied upon a defective hypothetical. The Commissioner disagrees. After careful consideration, and for the reasons set forth below, I find that the ALJ's decision denying benefits is supported by substantial evidence. Consequently, Williams' Motion for Summary Judgment (Docket No. 9) is denied. The Commissioner's Motion for Summary Judgment (Docket No. 11) is granted. The ALJ's decision is affirmed.

## STANDARD OF REVIEW

The scope of review by this Court of an appeal from the Commissioner's decision is limited to determining whether the commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); Schaudeck v. Comm'r. of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described

as requiring more than a "mere scintilla" of evidence, but equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. A single piece of evidence will not satisfy the substantiality test if the ALJ ignores or fails to resolve a conflict created by countervailing evidence. Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Monsour Medical Center v. Heckler, 806 F.2d 1190, 1195 (3d Cir. 1986), citing, 42 U.S.C. § 405. If the decision is supported by substantial evidence, I must affirm it, even if I would have decided the case differently. Bailey v. Apfel, CA 97-8908, 1998 U.S. Dist. LEXIS 10595 at * 2 (E.D. Pa. July 9, 1998) (citations omitted).

## **ANALYSIS**

In determining whether a claimant is eligible for disability insurance benefits or supplemental security income, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of impairments) which is so severe that he is unable to pursue substantial gainful employment currently existing in the national economy. 42 U.S.C. §§ 423(d)(1)(A) and (d)(2)(A). In addition, the impairment must be expected to last for not less than twelve months. 42 U.S.C. § 423(d)(1)(A); Morales v. Apfel, 225 F.3d 310, 315-16 (3d Cir. 2000).

To determine the claimant's rights to either disability insurance benefits or supplemental security income benefits, the ALJ conducts the same five-step

evaluation. If the claimant is working or doing substantial gainful activity, a finding of not disabled is directed and the analysis is completed. 20 C.F.R. § 404.1520(b), 416.920(b). In step two, the ALJ determines if the claimant suffers from "a severe impairment that significantly limits his or her ability to do basic work activity." Id., §§ 404.1520, 416.920. The ALJ then considers whether the claimant retains the residual functional capacity to perform past relevant work. Id., §§ 404.1520(e), 416.920(e). If not, the ALJ, taking into account the claimant's residual functional capacity, age, education, and past work experience, determines whether the claimant can perform other work that exists in the national economy. If the claimant can perform such other work, he is not disabled. Id., §§ 404.1520(f), 416.920(f). In all but the final step, the burden of proof is on the claimant. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); 42 U.S.C. §§ 416(1), 423(d)(1)(A).

In this case, the ALJ determined at the fifth and final step of the analysis that Williams was not disabled within the framework of 20 C.F.R. 404.1520. The ALJ found that, while Williams was unable to resume her past relevant work, "she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. 21). Therefore, she is not disabled.

Williams' appeal is comprised of three main arguments. First, she claims that the prior ruling was not supported by substantial evidence because the ALJ rejected Dr. Iannuzzi's findings. Second, she contends that the ALJ's hypothetical question to the Vocational Expert ("VE") was deficient because it did not include the limitations set forth by Dr. Iannuzzi. Finally, she argues that her seizures are

disabling because the Commonwealth of Pennsylvania revoked her driver's license and she has difficulty concentrating because of the disorder.

### A. THE REJECTION OF DR. IANNUZZI'S FINDINGS

Williams first argues that the prior decision is not supported by substantial evidence because the ALJ rejected Dr. Iannuzzi's conclusions. The Commissioner's position is that Dr. Iannuzzi's conclusions were not persuasive because they were contradicted both by his own report and by the testimony of Williams herself. Having thoroughly reviewed the record, I agree with the Commissioner.

Dr. Iannuzzi reported that Williams suffered from "blackouts + unsteadiness + fatigue" and found that she was capable of standing or walking for only one hour in a typical eight hour work day. (R. 321). In addition, Dr. Iannuzzi's report indicates that Williams is capable of lifting only two to three pounds occasionally, can sit for only one to four hours in an eight hour work day, and has limitations in postural activities and other physical functions. (R. 321-322). Based on this evaluation, Dr. Iannuzzi concluded that Williams is limited to less than sedentary work. (R. 321-22). However, the record as a whole does not support that conclusion.

Presumably, Dr. Iannuzzi was referring to Williams' seizure disorder when he diagnosed her with blackouts, yet numerous treating physicians reported that Williams' seizures were under good control. Dr. Shymansky reported that she was "seizure-free" (R. 168) and that the disorder ". . . appears to be quite stable." (R. 169). Both Dr. Bohner and Dr. Bazron characterized the seizure disorder as stable. (R. 202, 446). Dr. Smolar also indicated that the seizures were under good control. (R. 261).

5

The evidence of record clearly establishes that Williams' seizure disorder was under excellent control and did not preclude her from working.

Besides Dr. Iannuzzi, no other doctor reported problems with steadiness. Williams did not complain of problems with balance or falling. In fact, Dr. Pacella reported that there was ". . . no evidence of . . . abnormalities involving . . . gait." (R. 339). Dr. Smolar reported that "gait and coordination are normal." (R. 258). Dr. Iannuzzi's vague diagnosis of unsteadiness is not supported by the evidence.

Likewise, the record contradicts Dr. Iannuzzi's conclusion that Williams suffered from fatigue. Dr. Iannuzzi's own report indicated that Williams, who stood 67 inches in height (5'7") and weighed 169 pounds, possessed a grip strength of 5/5 in her right hand, 4/5 in her left hand, and suffered from no diminishment in strength in her upper extremities. (R. 317-321). Yet, Dr. Iannuzzi concluded that Williams was capable of lifting only two to three pounds occasionally. Furthermore, Williams herself testified that she is capable of lifting between ten and fifteen pounds and walking several miles at a time. (R. 45). She also routinely completes activities such as cooking, laundry, and other household chores. (R. 110, 213, 42-43, 111).

Williams' argument that the ALJ's decision cannot be supported by substantial evidence because Dr. Iannuzzi's conclusions were not relied upon is not persuasive. Her own testimony, Dr. Iannuzzi's report, and the conclusions reached by several other treating physicians conflict with the assertion that she does not possess the residual functional capacity to perform light work. The ALJ's ruling that she

possessed the residual functional capacity to perform a variety of light work is supported by substantial evidence.

### B. THE HYPOTHETICAL QUESTION TO THE VE

Williams' second argument is related to the first. She claims that the hypothetical posed by the ALJ to the VE was defective because it did not include the impairments and limitations found by Dr. Iannuzzi.

For the reasons set forth above, the ALJ correctly discounted the conclusions reached by Dr. Iannuzzi. The large majority of the evidence of record, Dr. Iannuzzi's report, and Williams' testimony undermine the believability of her claims of limitations in her ability to stand, walk, and sit. Therefore, the fact that the impairments and limitations imposed by Iannuzzi were not included in the ALJ's hypothetical does not render it defective. (R. 51).

### C. THE SEIZURE DISORDER

Williams' third argument focuses on her seizure disorder. She argues that her seizures were classified as a severe impairment by the ALJ, hinder her ability to perform basic work activities on a continual basis, and occurred over the course of several years. In support of her claim, she points to the revocation of her driver's license by the Commonwealth of Pennsylvania (R. 133) and her own testimony concerning her inability to maintain focus and concentration (R. 37-38, 41, 44, 47). Williams concludes that her seizure disorder qualifies as a disability.

The fact that the Commonwealth revoked Williams' driver's license is not dispositive of the issue of whether her impairments precluded her ability to work.

If the ALJ had determined that Williams could return to her past relevant work as a bus driver, then the license revocation might have some importance. Yet the ALJ found that Williams could perform other work, such as hand packing and product inspecting. Nothing in the record suggests that the state's revocation of Williams' driver's license had any bearing on her ability to perform other work.

Further, the medical records contradict Williams' assertions that her seizures are disabling. Despite the fact that the Commonwealth revoked her license, as detailed above, her seizures appear to be under excellent control. Indeed, in January 2002, Dr. Shymansky found that she had not suffered a generalized seizure since 1998, and stated that ". . . she will not get disability because of an occasional seizure." (R. 168). In April 2002, Dr. Small also reported that Williams had not experienced a seizure since 1998. (R. 191, 329). Dr. Valeriano stated that her generalized seizures were under good control. (R.21).

In fact, no treating physician ever concluded that Williams' seizure disorder precluded her from working. For example, Dr. Pacella indicated in his report that she possessed "good" ability to maintain concentration and ". . . suffers from no defect of attention or concentration that would preclude employability." (R. 340, 342). Williams herself stated that she had no difficulty understanding instructions and carrying them out. (R. 114). In light of these facts, the ALJ's ruling that Williams' seizure disorders were not disabling is supported by substantial evidence.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EYVONNE WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 04-1408 |
| | ) |
| THE COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **25th** day of July, 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, It is Ordered that the decision of the ALJ denying benefits is affirmed. Consequently, Williams' Motion for Summary Judgment (Docket No. 9) is denied and the Commissioner's Motion for Summary Judgment (Docket No. 11) is granted. Judgment is entered in Favor of Defendant and against Plaintiff.

BY THE COURT:


/s/Donetta W. Ambrose,

Donetta W. Ambrose,
Chief U. S. District Judge